UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARK SUTHERLAND, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 CV 03455 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| URBAN PARTNERSHIP BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mark Sutherland alleges that Urban Partnership Bank violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), which governs the furnishing of information about loans and debts to credit reporting agencies.[1] Sutherland alleges that Urban, as a furnisher of information under the Act, transmitted inaccurate information regarding Sutherland's loans. Urban's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is before the Court. R. 17. For the following reasons, the motion to dismiss is denied.

**I.**

At this stage of the litigation, Plaintiff's allegations are taken as true and reasonable inferences are drawn in his favor. Mark Sutherland was a long-time customer of ShoreBank, which was later acquired by Defendant Urban Partnership Bank. R. 13 ¶¶ 5, 28. Sutherland drew several loans under his name. The loans at issue are loans numbers ending with 911, 960, 501, and 502 (for convenience's sake,

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

and to comply with Federal Rule of Civil Procedure 5.2(a)(4), the opinion refers only to the last 3 digits of the loan number).² *Id.* ¶¶ 6-24.

With regard to loans 501 and 502, Sutherland and ShoreBank entered into Loan Modification Agreements extending the maturity dates and modifying the terms of those two loans on more than three separate occasions. R. 13 ¶¶ 14-22. The Agreements were then made retroactive effective as of the date the loan had matured. *Id.* ¶ 5. During periods of negotiation, it was ShoreBank's practice to accept continued payments based on the loan terms. *Id.* According to Sutherland, he made on-time payments for various months in 2010, yet ShoreBank reported several payments as delinquent to the Reporting Agencies. *Id.* ¶¶ 25-27.

In August 2010, ShoreBank failed, and Urban acquired all of ShoreBank's assets.³ Upon the maturity of his loans at that time, Sutherland entered into negotiations with Urban to extend and modify the terms of loans 501 and 502. R. 13 ¶ 34. Urban advised Sutherland that as long as he continued making interest payments while the parties documented another Agreement, the loans would not be reported as delinquent. *Id.* ¶¶ 18, 24. During negotiations, but before the parties had

---

²With regard to loan numbers 911 and 960, Sutherland alleges that Urban delayed in correcting its reports to the Reporting Agencies. R. 22 at 5-6. More specifically, Sutherland alleges that Urban exceeded the statutory time frame pursuant to § 1681s-2(b)(2) and §1681i(a)(1)(A). *Id.* Because these allegations are submitted in the response to Defendant's 12(b)(6) motion but are not in the amended complaint, the Court will dismiss those claims unless Sutherland files a second amended complaint with a claim for relief under § 1681o.

³The Complaint alleges Urban acquired all of ShoreBank's assets, including the duties and obligations "relating to ShoreBank's records." R. 13 ¶ 28.

2

entered into a modification Agreement, Urban reported to the Reporting Agencies that Sutherland's September to December 2010 payments were delinquent. *Id.* ¶ 32.

Sutherland learned about these reports and informed both ShoreBank and Urban that its reports to the Reporting Agencies were misleading and inaccurate. R. 13 ¶ 33. Around September 1, 2010, Sutherland contacted the Reporting Agencies to dispute the reports furnished by his creditors. *Id.* ¶ 35. The Reporting Agencies notified Urban of Sutherland's dispute of the reports supplied by Urban and ShoreBank. *Id.* ¶ 36. As a result of the mistaken credit reports, Sutherland alleges, the reports affected Sutherland's personal credit scores and his ability to obtain financing to support his business ventures and personal mortgage. *Id.* ¶¶ 45-46.

## II.

Under the Federal Rules of Civil Procedure, a complaint generally need only include "a short an plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police*

3

*Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 129 S.Ct. at 1950.

### III.

### A.

Urban first argues that the claim under the Fair Credit Reporting Act must be dismissed because Sutherland does not sufficiently allege that Urban was notified by a Reporting Agency. R. 19 at 2. Urban acknowledges that Sutherland has furnished a letter that ostensibly notifies the Reporting Agencies as to the dispute raised by Sutherland. But Urban argues that the information contained in the notice was insufficient. The crux of Urban's argument is that, based on the facts stated in Sutherland's amended complaint, the Court may infer only that a Reporting Agency merely requested Urban to verify Sutherland's account. R. 19 at 2. According to Urban, such verification amounts to an "inquiry" that is insufficient to trigger a claim under

4

§ 1681s-2(b) of the Act.[4] R. 19 at 2. But Urban fails to support this inference with any documentation of any such inquiry, and at this stage of the litigation, the Court accepts as true Sutherland's allegations that Urban was notified about the dispute.

A furnisher has a statutory duty to investigate the accuracy of disputed information upon receiving a formal notice from a credit reporting agency. *See* 15 U.S.C. § 1681s–2(b); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). Section 1681i(a)(2), in turn, defines notice as including "all relevant information regarding the dispute that the agency has received from the consumer or reseller." Generally, when a plaintiff brings a claim in federal court, he only needs to allege "sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (other citations omitted). Under *Twombly*, notice pleading does not require evidentiary proof since "the rule 'plaintiff needs to prove Fact Y' does not imply 'plaintiff must allege Fact Y at the outset.'" *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923-924 (7th Cir. 2007). Here, we can rely on *Twombly* to conclude that a "notification" that triggers duties under the Act need not be pleaded with particularity. Where *Twombly* requires only "fair notice" of plaintiff's claims and that the recovery merely be "plausible," a complaint may be deemed sufficient if the allegations state that the

---

[4]Urban has not cited to any authority to support this proposition.

plaintiff informed a Reporting Agency of the dispute and that the furnisher failed or refused to investigate or correct the error.

The complaint adequately states that the Reporting Agencies notified Urban of Sutherland's dispute with the furnished reports. R. 13 ¶ 36. Sutherland alleges that he informed Urban, ShoreBank, and the Reporting Agencies of his dispute with the credit reports, and that in turn, the Reporting Agencies notified Urban. *Id.* ¶¶ 33, 36. While it would certainly be helpful to have more information about the nature of the notice provided Urban, Sutherland need not prove, at the pleading stage, the specific contents of the notice.

**B.**

Urban's second argument is that it cannot be held liable for inaccurate reporting because Sutherland's loans were not paid in full after they were due. R. 7 at 8-9, 12. Because loan modification agreements were not yet in formal effect when Sutherland's delinquent status was reported to Reporting Agencies, according to Urban, the furnished information (delinquency) was not false. *Id.* at 9. But Urban elevates form over substance because what Urban reported was actually incomplete information that could have been misleading, and thus "inaccurate" under § 1681s-2(a)(1)(B).

To see why incomplete information in these circumstances can be "inaccurate," it is useful to examine the Act's purposes. Congress enacted the Fair Credit Reporting Act in 1970 in order to ensure "a fair and accurate credit reporting" mechanism that would "evaluat[e] the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." 15 U.S.C. § 1681. To this end, the Act imposes

6

certain requirements on consumer reporting agencies and entities that furnish information to those agencies. *Westra*, 409 F.3d at 827. When a consumer disputes information with regard to an account, the Act requires the Reporting Agency to notify the furnisher of the disputed information. 15 U.S.C. § 1681s. Upon receipt of this notice, a furnisher must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the consumer reporting agency; (3) report the results of the investigation to the consumer reporting agency; and (4) if the information is found to be *incomplete* or inaccurate, report those results to all consumer reporting agencies that provided the erroneous information. § 1681s-2(b)(1) (referring to duty to investigate "a dispute with regard to the *completeness* or accuracy of any information") (emphasis added).

Because accuracy has been held to be a defense to alleged violations of § 1681, "[w]hat constitutes accuracy thus becomes an important question, and there is currently a circuit split on the issue." *Shannon v. Equifax Info. Services*, 764 F. Supp.2d 714, 721 (E.D. Pa. 2011). The Sixth Circuit has held that the submission of a technically accurate report is sufficient to present a defense against alleged § 1681 violations.[5] *See Dickens v. Trans Union Corp.*, 18 Fed. Appx. 315, 318 (6th Cir. 2001).[6]

---

[5]The Eleventh Circuit disclaimed picking between varying approaches in *Cahlin v. General Motors Acceptance Corp.*, 936 F.3d 1151, 1157 (11th Cir. 1991) ("The instant case, however, presents a much narrower issue that does not require us to ratify either of these two approaches as the law of the circuit.")

[6]Before January 1, 2007, when the amendment to Federal Rule of Appellate Procedure 32.1 required that unpublished appellate decisions nationwide be citeable (if not precedential), Sixth Circuit Rule 28(g) already permitted the citing of unpublished opinions for their persuasive (not binding) value.

Other Circuits have rejected this approach, and instead have adopted a formulation equating inaccuracy to "misleading," thus interpreting the Act to prohibit the presentation of credit information in a manner that would lead to a "materially misleading impression." *Saunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142, 148-150 (4th Cir. 2008); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (holding that a report that is misleading to such an extent that it can be expected to adversely affect credit decisions violates the Act); *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) (holding that a credit entry can be incomplete or inaccurate within the meaning of the Act "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions"); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984) ("reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports").

The Seventh Circuit has not picked a side or otherwise defined in detail the accuracy standard for claims under § 1681s-2(b). One clue in the Act's text is the duty of information furnishers to investigate disputes not only over the "accuracy" of information, but also the "completeness" of any information. § 1681s-2(b)(1). If the investigation reveals inaccurate or "incomplete" information, then the furnisher must report the investigation's results to the credit reporting agencies. All of this makes sense, from the standpoint of the Act's purpose, because an inaccurate assessment of creditworthiness may arise from an incomplete report. Congress passed the Act so that

8

individuals could have their creditworthiness fairly and accurately assessed, and just as importantly, so that third-parties, such as potential creditors or employers, would be able to fully assess a consumer's credit worthiness. *See* 15 U.S.C. § 1681 ("An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers"); *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F. 3d 971, 981 (7th Cir. 2004) ("Congress found that agencies were too often reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment"). The Court thus concludes that the accuracy obligation has not been met if the furnisher provides information that is "misleading" in a way that "can be expected to have an adverse effect" on the consumer. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001).

Here, the complaint contains sufficient allegations that Urban violated the Act when it verified Reporting Agency reports as correct, but failed to mention any ongoing negotiations to modify the loan terms, and that failure was particularly misleading where Urban had previously modified and continued the loans after the maturity date. Although Sutherland's loans had matured at the time of the reporting, Urban failed to submit material information that the loans were under negotiations for extensions and modifications. Moreover, Urban advised that as long as Sutherland continued payments on the matured loans, the loans would not be reported as delinquent. R. 13 ¶ 18.

Urban argues that Sutherland cannot rely on any oral assurances that loan modifications were forthcoming pursuant to the Credit Agreement Act of Illinois, 815 ILCS 160/0.01. R. 7 at 10-11. The Credit Agreement Act requires that any agreement that has to do with credit must be made in writing. 815 ILCS 160/2. Sutherland, however, brings an action for violations of the Fair Credit Reporting Act—not an action for breach of contract. R. 13 ¶ 5. That is, Sutherland is not seeking to enforce, under state law, the terms of the loan modification—he is seeking damages based on Urban's failure to abide by its duties under the Fair Credit Reporting Act. One of the alleged failures of duty arises from the incomplete information furnished by Urban, namely, that there were ongoing negotiations to extend or modify the loan, and previous extensions had been successfully entered into with Sutherland in the past. Therefore, the Credit Agreement Act does not bar Sutherland from contesting the accuracy or proper reporting of Urban's "delinquent" status.[7]

At the end of the day, the omitted information was material—that is, the information reasonably could be taken into account by an assessor of creditworthiness—and thus the reported information was inaccurate. Shorebank's historical practice of entering into loan modification agreements with Sutherland after the maturation of the loans,[8] combined with Urban's recommendation to Sutherland

---

[7]Urban also seems to read Sutherland's claim as asserting third-party rights to an agreement among Urban, Shorebank, and the FDIC. R.23 at 8. But Sutherland makes no such claim. Sutherland's claim instead relates to rights under the Act and whether Urban met its duty under that federal statute.

[8]Urban, in citing *Hukic v. Aurora Loan Services*, 588 F.3d 420 (7th Cir. 2009), argues that creditors are not responsible for correcting inaccurate reports of other agencies. This case,

10

to continue payments, sufficiently form the basis for the allegation that the report Urban submitted to the Reporting Agencies was "incomplete and inaccurate" within the meaning of the statute. Urban omitted important information about the nature of the loans. Moreover, Sutherland has alleged that the inaccurate report adversely affected his credit scores, and more importantly, his ability to secure additional financing. Urban's failure to submit such important details could create a "materially misleading impression" leaving an "adverse effect" on the consumer. *Saunders*, 526 F.3d 142, 148 (4th Cir. 2008).

## IV.

The Court denies Defendant's motion to dismiss. R.17. At the March 1, 2012 status hearing, the parties should be prepared to discuss a discovery schedule, as well as whether a settlement conference would be appropriate before incurring the time and expense of discovery.

ENTERED:

*Edmond E. Chang*
_____
Honorable Edmond E. Chang
United States District Judge

DATE: February 21, 2012

---

however, is distinguishable from *Hukic* because ShoreBank is not another agency or entity. Urban has fully assumed ShoreBank's liabilities through its acquisition of the bank and thus cannot relinquish its duties as a furnisher of information.